GEORGE GLASSCOCK V. THOMAS GLASSCOCK'S ADM'R AND
ANOTHER.

It would seem that the voluntary payment of the whole purchase money, by
one of several joint purchasers, does not give him a lien upon the property
for reimbursement of the shares of his co-purchasers. But, however that
might be, upon general principles, see this case for circumstances under which
it was held that such lien could not be implied.

See this case for evidence which was held to be sufficient to warrant a finding,
that money which was paid by one of two partners, in the presence of the
other on account of a joint purchase of real estate, was partnership funds,
or was subsequently adjusted in transactions between the parties.

One who has the legal title, and is informed of the facts which constitute equit-
able title in another, will not be allowed the value of improvements made in
violation of the express orders of the equitable owner, unless, perhaps, out of
the rents.

Appeal from Travis. Tried below before the Hon. John
Hancock.

Suit by Francis Dieterich, Thomas Glasscock's administra-
tor, and H. G. Blakey, appellees, against G. W. Glasscock,
appellant, and one Malitzky, a tenant, to recover the south
half of lot No. 4, in block No. 69, in the city of Austin.

The pleadings showed, without controversy, that on the 21st
day of October, 1832, G. W. Glasscock and Thomas Glasscock
purchased from James Cole lot No. 3 and the south half of lot
No. 4, in Block No. 69, for the sum of $3000, for which they
executed three notes for $1000 each payable the 1st day of
January, 1853, the 1st day of January, 1854, and the 1st day
of January, 1855, with interest on the two last notes at ten per
cent. from the 1st January, 1855 ; and Cole executed his bond
binding himself to convey the property when they paid the
purchase money. This bond was recorded on the 22nd Octo-
ber, 1852. On the 12th day of July, 1853, the two Glasscocks
wishing to divide the lots, entered into a written agreement to

the effect that Geo, W. was to have lot No. 3, and Thomas the south half of lot No. 4. Thomas released his interest in lot No. 3, to George, and George his interest in the south half of lot No. 4, to Thomas, and each authorized Cole to make titles to the respective parties to said lot and half lot, in conformity to the agreement, when the payments should be made in accordance with the tenor of the bond executed by Cole to them. This deed of partition was recorded on the 20th Oct., 1853.

On the 20th October, 1853, Thomas Glasscock sold one undivided half of the south half of lot No. 4, to John Roark. On the 8th December, 1853, Thomas Glasscock sold the other undivided half of the south half of the lot to Green B. Moore. Roark died and Thomas Glasscock bought his half at administration sale, which sale was confirmed at the March Term, 1854, of the Probate Court of Travis county. This conveyance, by an agreement between the parties, was made by Roark's administrator to the administrator of Thomas Glasscock and the plaintiff, H. G. Blakey. In April, 1854, G. B. Moore conveyed his half back to Thomas Glasscock and the plaintiff Blakey.

On the 6th of December, 1854, Cole conveyed to George W. Glasscock the lot and half lot before alluded to for the nominal sum of thirty-two hundred dollars, without any reference in the deed to his title bond previously given. The plaintiff Dieterich claimed that his intestate had paid his share of the payments, made before his death, which was in November, 1854; and that the defendant had in his hands sufficient funds of the intestate, to pay his share of the payment falling due January, 1st, 1855; and that the defendant took the deed in his own name, to defraud the widow and heirs of said intestate. He also claimed rent. Blakey, in addition to the allegations of his co-plaintiff, claimed to be an innocent purchaser without notice. The defendant alleged that he had paid all the purchase money himself, and that he was entitled to the property; but that at all events he was enti-

tled to be reimbursed in one half the purchase money, before the plaintiffs could recover the property sued for. He also claimed the value of improvements made by himself.

James Cole, called by defendant, testified that George Glasscock paid him all three of the notes ; the amount paid on the first was $1000, on the second was $1100, and on the third was $1200 ; that Thomas Glasscock was present at the payment of the first note ; and that witness gave them possession of the property, and the remnant of the liquors he had on hand at the time the first note was paid ; that Thomas Glasscock died in November or December, 1854 ; that the money was received from the hands of George Glasscock, and that each of said notes was paid a short time before due.

John Bremond, for defendant, testified that, in January, 1853, Thomas Glasscock told him that the first payment was cash, $1000 ; the second in one year, and the third in two years ; that the payment had been made by George W. Glasscock ; that they, George and Thomas, were going into business ; that George had the key of the premises and possession for three months before the death of Thomas ; that when witness visited the premises on the lot in controversy they were empty, Thomas Glasscock having abandoned business when the liquor law went into operation. Thomas Glasscock was considered insolvent. George and Thomas owed witness two hundred dollars, and Thomas owed him ninety dollars. Witness obtained judgment on a note, transferred to him by Thomas Glasscock, against G. B. Moore for $400, which was endorsed by George Glasscock, and which George Glasscock paid. Thomas Glasscock paid witness $326, on account of the firm of George and Thomas Glasscock. Thomas Glasscock was an enterprising man, made money, but generally, if not always, disposed of it at the gaming table. Did not have a great deal of means when he commenced business with George ; he told witness he was "broke," and that he (witness) had better take the note above referred to. Wit-

ness had no business with Blakey and Glasscock. Thomas Glasscock made considerable property, at times, after he and George purchased the lot in controversy. The lot and improvements are worth thirty-three or thirty-four hundred dollars; the repairs on the property were worth, or must have cost $500 or $600. It was proved that the defendant paid $67 20 for improvements, out of his own funds, during the partnership.

Payne, a witness for defendant, testified that Thomas Glasscock offered to sell him one half of the property in controversy, in October, 1853, for $2500; that Thomas told him that George had paid for the property, and that it did not belong to him (Thomas.)

A. H. Cook, for defendant, testified that the improvements, put upon the premises by George Glasscock were reasonable and necessary to make the property rent to advantage. George paid witness for $66 worth of work on them; that the property and improvements were worth $5000.

S. G. Sneed, for plaintiff, testified that the property in controversy was in the possession of Blakey and Glasscock before the death of Thomas Glasscock.

Cole, recalled, testified that Dieterich did not offer to pay him until after he had been paid by George Glasscock; that the deed from witness to George Glasscock, was tendered to witness twenty-five miles from Austin; that the last payment was made on December 24, 1854. The agreement between witness and George Glasscock was signed by both, and executed 24th December, 1854. From February 1st, 1855, the property rented at $50 per month and rents were received by George Glasscock.

Sneed, recalled, testified that, as administrator of Roark, he sold the property in controversy. Never heard George Glasscock make any objection to the sale until after the death of Thomas. Did not know that George had ever had his attention directed to the sale. The property was advertised in the

"State Times," and public notices posted. It was a matter of public notoriety in Austin, and George Glasscock lived there.

Beveridge testified that he was connected with the "State Times," and that Glasscock was a subscriber to that paper at the time the property was advertised.

The improvements made by George Glasscock and Malitzky were proved to be worth $600.

The rent and use was proved to be worth $200.

A. W. Terrell testified that he told George Glasscock that Blakey would not be responsible for any improvements, and, if he put them on the lot, he would do it at his own risk; that George replied he would take the responsibilty, and upon this Malitzky took possession. Witness was Blakey's attorney.

The plaintiff put put in evidence a bond of indemnity from George Glasscock to James Cole, holding the latter harmless from any consequences that might ensue from his (Cole's) having made the conveyance solely to George; dated December 24th, 1854.

The ouster was laid in February, 1855, and the trial was in May of the same year.

A jury was waived, and the cause submitted to the Judge, on the foregoing evidence, upon which the following decree was rendered: That the title to the half of lot No. 4, be vested in equal moieties in the administrator of Thomas Glasscock and his co-plaintiff Blakey. And it further appearing to the satisfaction of the Court, that there is justly due from the estate of the said Thomas Glasscock, deceased, to the said George Glasscock, the sum of five hundred and fifty dollars, with eight per cent. interest thereon from the first day of January, 1855, until paid; it is therefore decreed that the above sums, with the legal interest thereon, be just and subsisting claims against the estate of the said Thomas Glasscock, deceased, and that this portion of this decree, establishing said claims, be certified to the Probate Court, and that said claims be paid in due course of administration, as other claims against

said estate. The $67 20 paid by George for improvements during the partnership was also allowed, and ordered to be certified in the same manner.

And it further appearing to the satisfaction of the Court, that the improvements made by the said George Glasscock on the said south half of lot No. 4, after the death of the said Thomas Glasscock, deceased, were not made in good faith, but with a full knowledge of the rights of the plaintiffs, and that the value of the same amounts to $600 ; and it further appearing that there is due to the plaintiffs in this case, from the said George Glasscock, the sum of two hundred dollars for rent of the said half lot ; and it further appearing that said improvements, though not made in good faith, are of a permanent and valuable nature, and enhance the value of the said property, it is therefore ordered, adjudged and decreed that the said rents and the value of the said improvements mutually cancel each other. It is therefore ordered that the prayer of the defendant, for the value of his improvements, be also refused.

It is further ordered, adjudged and decreed that the proper writ of possession and restitution issue, commanding the Sheriff of Travis county, or other lawful officer, to evict and oust the said George W. Glasscock and the said Louis Malitzky from the said south half of lot No. 4, in block 69, above described, and that the lawful possession of the same be given to the said Francis Dieterich, as administrator, as aforesaid, and the said Hartwell G. Blakey, and that they be quieted in the same.

It is further ordered, adjudged and decreed that the said plaintiffs do have and recover of and from the said defendants, George W. Glasscock and Louis Malitsky, all the costs of this suit, for which execution may issue.

*Hamilton, Chandler* and *Anderson*, for appellant.

*Brewster, Hancock & West*, and *Oldham & Terrell*, for appellees.

WHEELER, J. The principal question is, whether the payment by the appellant, of more than his share of the purchase money, gave him a lien upon the premises for the repayment of the money advanced for the other joint purchaser. In Sugden on Vendors, it is said, " that where two or more persons " purchase an estate, and one, for instance, pays all the money, " and the estate is conveyed to them both, the one who paid " the money cannot call upon those who paid no part of it to " repay him their shares of the purchase money, or to convey " their shares of the estate to him ; for by payment of all the " money he gains neither a lien nor a mortgage, because there " is no contract for either ; nor can it be construed a resulting " trust, as such a trust cannot arise at an after period ; and " perhaps the only remedy he has, is to file a bill against them " for a contribution." (2 Sug. on Vend. Ch. 20, Sec. 1, p. 387 of 6th Am. from 11th London edit.) So in Dart on Vendors, it is said, " In the case of joint purchasers, if one joint tenant " lay out money in repairs or improvements, which may be " either necessary, or sanctioned by the other joint tenants, or, " in case of renewable leaseholds, advance money for the ex- " pense of a renewal, he has a lien on the estate for the amount ; " but if one purchaser advance more than his share of the " purchase money, he acquires no lien on the estate ; nor, it " would appear, has he any remedy except a suit for contribu- " tion." (Dart on Vend., Waterman's Am. edit., 433–4.) " And," it was added, " where purchasers stand in the relation " of partners, any advantage secured by one—e. g. the renewal " of a lease, or an abatement of incumbrances,—enures to the " the benefit of the others." (Ib.)

These authorities, it would seem, must be decisive of the question, against the right of lien claimed by the appellant. But, however that might be, on general principles, or whatever might have been the rights of the appellant, if he had been compelled to pay the money for his co-purchaser, as his surety, we are of opinion that the particular facts and circumstances

of the case repel the supposition of any intention to retain or create a lien as between the parties, and amount to a virtual waiver of it, if in any event such lien would have arisen, or subsisted. The agreement of the parties effecting a severance of their joint interest, the mutual releases passed between them, the stipulation as to the manner of making the title upon payment of the residue of the purchase money, and the making of the payments by the appellant voluntarily and before any fell due, and procuring the title to the property in his own name, repel the supposition that any right of lien was relied on or intended.

Where, *prima facie*, a lien would exist in favor of the vendor, for unpaid purchase money, if it affirmatively appear, from the circumstances of the case, that none was intended, it will be deemed that none exists. (Id. 118, 350 ; 4 Kent, Com. 152 *et seq.*; Story's Eq., Sec. 1220–1–2, 1217n.) Without commenting upon the facts, it may suffice to say, we think it clear, under the circumstances of the case, that a right of lien did not subsist in favor of the appellant. And it is unnecessary to inquire what might be the right of a joint purchaser, or a surety paying money for his principal in a case differently circumstanced.

It cannot affect the rights of the appellees in the premises, that the appellant, anticipating the maturity of the last payment, and preventing the administrator of the deceased joint purchaser from making the payment at maturity, procured the conveyance to be made to himself. He must be deemed to hold the title in trust for the appellees.

It is insisted for the appellant, that the proof shows the payment by him of the whole of the purchase money ; as well the first as the subsequent payments ; and consequently that the Court erred in not giving him judgment against the estate of the deceased joint purchaser for half of the entire purchase money. The evidence does not relieve the case, upon this point from doubt. The witness to whom the money was paid stated that he received the money at the hands of the appellant ;

but it was in the presence of the other partner in the purchase ; and it is insisted on the other hand, and not without reason, that, as they were then partners in business, the payment for their joint purchase thus made, must be presumed to have been made with their joint funds ; though received at the hands of one, that both contributed equally to the payment. Then, there are the statements or admissions of the deceased partner, that the appellant made the payment. But these statements appear to have been made in casual conversations ; and there are strong circumstances tending to the conclusion that, if the whole payment was made by the appellant, it must have been subsequently adjusted and settled between them. Their joint purchase was subsequently severed and partitioned between them, without any mention, as appears, of any inequality in the payment which had been made. It may have been taken into the account in settling their respective parts in that partition ; that, released to the appellant, may have been the more valuable. Then again, the business in which they were engaged, it seems, was afterwards suspended and closed, and their partnership dissolved. It would seem highly probable, at least, that in the settlement of their partnership business, this payment was taken into the account. In the meantime the partner, since deceased, was disposing of his part of their joint purchase. It certainly is not consistent with the ordinary modes of doing business, that, under the circumstances, this payment should have remained a charge against the latter up to the time of his death, and that the appellant should have preserved no better evidence of its continued subsistence. Considering the effect to which the decision of the fact, in the Court below, is entitled, we cannot say that it was so manifestly against the evidence as to warrant a reversal of the judgment ; or a reformation of it in that particular.

For the advances made by the appellant for improvements, during the partnership, he was entitled to a lien on the property ; but for those made after the property had come into

other hands, and when he was forbidden to make them by the rightful owner, he was not entitled to compensation, unless perhaps out of the rents. But the rents which he had received were applied by the judgment of the Court to pay for improvements, and as they exceeded the value of those for which he had a right of lien, he cannot complain of the judgment as respects the improvements. And upon the whole we are of opinion that there is no error in the judgment, and that it be affirmed.

Judgment affirmed.